OPINION
Timothy Shaw, appellant, appeals a September 30, 1998 judgment of the Franklin County Court of Common Pleas finding him guilty of theft, in violation of R.C. 2913.02, a felony of the fifth degree.
On July 11, 1996, appellant entered into a contract with Shoemaker Equipment Rental ("Shoemaker") for the lease of a "knock down" engine hoist for one day at a rate of $34.90 per day so that appellant's friend, James Wright, could remove an engine from appellant's Cadillac. Appellant also paid a security deposit of $100. The rental of the hoist was to be for twenty-four hours pursuant to the rental agreement, and it was to be returned on July 12, 1996. Appellant did not return the hoist on July 12, 1996, and did not contact Shoemaker on that day with regard to the hoist.
Mr. Wright testified that he used the hoist on July 11 and July 12, 1996. After using it on the evening of July 12, 1996, he disassembled the hoist and placed it inside the Cadillac, which was parked in the street. Appellant testified that he did not know at that time that Mr. Wright had put the hoist inside the car. There was testimony presented at trial that in the late evening of July 12, 1996, a man broke the window of the Cadillac and carried the disassembled pieces of the hoist down an alley.
Appellant testified that he had been at a family reunion until the early morning hours of July 13, 1996, and did not notice the broken window on his Cadillac upon returning to his residence. He testified that he noticed the broken window upon returning from another family reunion on the evening of July 13, 1996. He immediately called the police, who came to his house and completed a report for malicious destruction of property. Appellant testified that because he did not know the hoist was in the Cadillac, he did not report the hoist stolen at that time.
On the afternoon of July 14, 1996, after being informed by appellant that his car window had been broken, Mr. Wright told appellant that the hoist had been inside the Cadillac and was now gone. Appellant testified that while cleaning the glass from the car, he flagged down a passing police wagon, and the police officers told him that he did not have to file a theft report regarding the hoist because he had already filed a malicious destruction of property report early that morning. Appellant never filed a theft report regarding the hoist.
There was conflicting testimony as to whether he had any contact with Shoemaker thereafter to explain why he had not returned the hoist or to report to Shoemaker that the hoist had been stolen. Appellant claimed that he called Shoemaker immediately after being told that the hoist had been inside the Cadillac. Mason Cobler and Teresa Love, employees at Shoemaker, testified that at no time did appellant call Shoemaker to tell them that the hoist had been stolen.
On August 8, 1996, Mr. Cobler contacted the police regarding the hoist. On October 30, 1996, pursuant to an arrest warrant, the police arrested appellant at his place of employment. Appellant was charged with theft, in violation of R.C. 2913.02, and the case proceeded to a jury trial.
After trial on the matter, the jury found that appellant had committed theft, in violation of R.C. 2913.02, and appellant was sentenced to Community Control for three years, including forty hours of community service, drug evaluation, and random drug screens. Appellant was ordered to pay restitution of $847.50.
Appellant appeals the trial court's judgment and assigns the following fourteen assignments of error.
 I. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTIONS FOR A DIRECTED VERDICT OF ACQUITTAL AND THE PROSECUTION FAILED TO PROVE ALL ELEMENTS OF THEFT AS ALLEGED IN THE INDICTMENT, THUS DENYING DUE PROCESS AND EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.
 II. THE JURY VERDICT OF GUILTY OF A FELONY THEFT UNDER O.R.C., [sic] SECTION 2913.02(A)(1) OR (2) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THUS DENYING DUE PROCESS AND EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION. MOREOVER, THERE WAS SUFFICIENT EVIDENCE OF ALIBI AND/OR OTHER EXCUSE OR JUSTIFICATION EVIDENCE TO PERMIT THE JURY TO CONSIDER APPELLANT'S DEFENSES AND THUS, THE TRIAL JUDGE COMMITTED PREJUDICIAL ERROR WHEN SHE REFUSED THE APPELLANT'S EVIDENCE TO BE CONSIDERED BY THE JURY (MORE PROBABLY AT THE POINT WHERE THE TRIAL JUDGE ENTERED THE JURY ROOM ALONE WHEN THE JURY WAS A HUNG JURY).
 III. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT FAILED TO VERIFY THAT THE JURY POOL AND ENSUING JURY AS SELECTED, COMPOSED OF ALL CAUCASIAN JURORS, WAS LEGAL IN A CRIMINAL CASE INVOLVING AN AFRICAN-AMERICAN DEFENDANT WITH SIMPLE MATHEMATICS REFLECTING THAT THE CHANCE OF RANDOM SELECTION WAS MINISCULE. FURTHERMORE, THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT DENIED APPELLANT QUESTIONING DURING VOIR DIRE THAT WERE PERTINENT AND APPROPRIATE BECAUSE THEY RELATED TO POTENTIAL OR ACTUAL BIAS, PREJUDICE AND/OR STEREOTYPING OF AFRICAN AMERICANS. ALL OF THIS CONSTITUTED DENIALS OF EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.
 IV. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT REFUSED TO GIVE APPELLANT'S JURY INSTRUCTIONS RELATING TO THE DEFECTS IN THE PROSECUTION'S CASE, AND TO THE DEFENSES OF THE APPELLANT. FURTHER, THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO PROVIDE AS JURY INSTRUCTIONS ALL OF THE DEFINITIONS RELATING TO THE THEFT ACCUSED IN THE INDICTMENT AND/OR REFUSED THE APPELLANT'S JURY INSTRUCTIONS THAT WOULD HAVE CURED THAT PREJUDICIAL OMMISSION [sic].
 V. THERE EXISTED IN THE TRIAL OF APPELLANT NUMEROUS INSTANCES OF PROSECUTORIAL AND JUDICIAL MISCONDUCT, AND THE APPELLANT'S MOTION FOR A MISTRIAL (AS WELL AS A MOTION TO WITHDRAW) WERE GRANTED, THEN REVERSED WHEN THE PROSECUTOR MENTIONED THAT DOUBLE JEOPARDY MAY APPLY. FURTHER, DOUBLE JEOPARDY OPERATES TO PREVENT A RETRIAL AS GUARANTEED BY THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION.
 VI. THE TRIAL COURT ERRED BY TREATING THIS CASE INVOLVING ALLEGED THEFT OF AN ENGINE HOIST THAT WAS OBTAINED LEGALLY UNDER A LEASE AGREEMENT AS A CONTRACT AND/OR NEGLIGENCE CASE, NOTWITHSTANDING THE PROSECUTOR'S AND TRIAL JUDGE'S ASSERTIONS TO THE CONTRARY.
 VII. THE PROSECUTION AND TRIAL COURT PREJUDICIALLY ERRED WHEN IT TREATED THE THEFT ACCUSATION AGAINST APPELLANT AS A CIVIL MATTER WITH CIVIL STANDARDS AND DENIED APPELLANT FROM SUBMITTING EXPERT WITNESS TESTIMONY AND IGNORED CITED LAW (AS WELL AS JURY INSTRUCTIONS) THAT WOULD INDICATE OR THAT WOULD REFLECT THAT THE LEASE CONTRACT WAS VOID IN PART AS AGAINST PUBLIC POLICY, WHEN AT THE SAME TIME TREATED THIS CASE AS A CONTRACT CASE AND NEGLIGENCE CASE AND CONTRAVENED O.R.C., SECTION 1351.03(B) [sic].
 VIII. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT FAILED AND REFUSED THE JURY, WHICH WAS A HUNG JURY, SIX TO SIX, ADDITIONAL TIME TO DELIBERATE THE FOLLOWING WEEK, THEREBY DENYING APPELLANT DUE PROCESS AND EQUAL PROTECTION. MOREOVER, THE TRIAL COURT COMMITTED PREJUDICIAL ERROR, INDUCED BY THE TRIAL JUDGE AND NOT APPELLANT, WHEN SHE ENTERED THE JURY ROOM ALONE UNDER THE PRETEXT OF DEFINING SOME ELEMENT WORD AS THE PLAIN MEANING, AND SHORTLLY [sic] THEREAFTER, THE HUNG JURY RETURNED WITH A UNANIMOUS GUILTY VERDICT, THEREBY CONSTITUTING PLAIN ERROR AND A DENIAL OF DUE PROCESS AND EQUAL PROTECTION AS GUARANTEED UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION.
 IX. THE TRIAL COURT ERRED WHEN IT GRANTED PROSECUTION'S [sic] ORAL MOTION IN LIMINE AND ORAL MOTION TO QUASH SUBPOENA OF TRENT TURNER FROM THE COUNTY PROSECUTOR'S OFFICE PRIOR TO COMMENCEMENT OR VOIR DIRE. THESE DENIALS WERE PREJUDICIAL TO APPELLANT AND DENIED HIM EQUAL PROTECTION AND DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.
 X. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT REFUSED TO CHARACTERIZE DETECTIVE ADKINS AS AN ADVERSE WITNESS SUBJECT TO CROSS-EXAMINATION BY APPELLANT, AND FURTHER PERMITTED THE PROSECUTION TO CONDUCT DIRECT EXAMINATION OF DETECTIVE ADKINS BEYOND THE SCOPE OF THE CROSS-EXAMINATION.
 XI. THE TRIAL COURT PREJUDICIALLY ERRED ON VARIOUS EVIDENTIARY RULINGS.
 XII. THE TRIAL COURT PREJUDICIALLY ERRED OR PLAINLY ERRED AT THE SENTENCING, AND THE SENTENCE OF APPELLANT WAS THEREFORE NOT IN ACCORDANCE WITH LAW.
 XIII. THE APPELLANT FAILED TO RECEIVE A FAIR AND IMPARTIAL TRIAL CONTRARY TO THE DUE PROCESS AND EQUAL PROTECTION GUARANTEES OF THE FOURTEENTH AMENDMENT. MOREOVER, THE TRIAL COURT IN CONJUNCTIONS WITH THE PROSECUTION, CONTINUALLY DEBASED, HUMILIATED AND INTERRUPTED AND/OR DENIED OBJECTIONS TO BE RECORDED AND PROFFERS MADE BY THE APPELLANT, CONTRARY TO THE DUE PROCESS AND EQUAL PROTECTION GUARANTEES OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.
 XIV. THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL PARTICULARLY IN LIGHT OF THE HUNG JURY, SIX TO SIX, AND THIS HUNG JURY WAS WITHOUT THE BENEFIT OF APPELLANT'S PROPOSED JURY INSTRUCTIONS RELATING TO HIS DEFENSES, AND PARTICULARLY IN LIGHT OF THE REVERSIBLE ERRORS MADE THE [sic] TRIAL JUDGE AND PROSECUTOR.
First, we note that in his brief appellant presented arguments only as to assignments of error one, two, three, four, five, and eight within the fifty-page limit as set forth in Loc.App.R. 7(B). Appellant moved this court to permit him to file a supplemental brief so that he could present arguments as to the remaining assignments of error. We denied appellant's motion for leave to file a supplemental brief. Because appellant failed to present any argument to support assignments of error six, seven, nine, ten, eleven, twelve, thirteen, and fourteen, these assignments of error are overruled. See App. R. 12(A)(2); App. R. 16(A)(7); Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159.
Appellant argues in his first assignment of error that the trial court erred when it failed to grant his motions for judgment of acquittal. Appellant moved for acquittal pursuant to Crim.R. 29(A) at the close of the state's case. A motion for acquittal at the close of the state's case pursuant to Crim.R. 29(A) addresses the sufficiency of the evidence. In State v.Thompkins (1997), 78 Ohio St.3d 380, 386-387, the Supreme Court stated:
 * * * "`[S]ufficiency'" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida
(1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Pursuant to Crim.R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261,263. An appellate court undertakes a de novo review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt.State v. White (1989), 65 Ohio App.3d 564, 568. See, also, Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant was charged with a violation of R.C. 2913.02(A)(2), which states:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
* * *
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]
"Deprive," as used in R.C. 2913.02(A) and utilized by the trial court, is defined in R.C. 2913.01(C)(1) as follows:
 (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration[.]
The state presented the following evidence and witnesses. Ms. Love, an employee at Shoemaker for approximately fourteen years, testified that she rented the engine hoist to appellant on July 11, 1996. Appellant paid Ms. Love $34.90 for a twenty-four-hour rental of the hoist, and he also paid a $100 deposit. When the hoist was not returned after twenty-four hours, Ms. Love informed the company's manager, Mason Cobler. Ms. Love stated that at no time did she receive a phone call from appellant or appellant's friends stating that the hoist was missing, and at no point did she give appellant consent to keep the engine hoist past twenty-four hours.
Mr. Cobler testified that he was the manager at Shoemaker at the time appellant rented the hoist, and he helped appellant load the hoist into the rear of appellant's car. When the hoist was not returned, Mr. Cobler called appellant on July 15, 1996. He did not speak with appellant on that date, but left a message with another person that appellant should call him. He called appellant again on July 27, 1996, and left another message with a male who answered the phone. On August 2, 1996, Mr. Cobler's brother called appellant and left a message with a male. Mr. Cobler testified that he made approximately six calls in an attempt to reach appellant between July 12 and July 15, 1996. He also tried to call appellant at his work number six to twelve times. At no point did he speak with anybody who identified himself as appellant. He stated that there were no notations on the contract that appellant had called to report the hoist stolen. Mr. Cobler stated that up to July 15, 1996, neither appellant nor any of his friends called him with regard to the hoist.
Mr. Cobler testified that he went twice to appellant's home to try to locate the hoist, but appellant was not home. He also went to a second address he found using Bureau of Motor Vehicle abstracts, but the person who answered the door stated that appellant did not live there anymore. After August 8, 1996, he decided to contact the police regarding the matter. Mr. Cobler spoke with Detective Adkins at the time he completed the police report.
Officer Delbert Chatman, a patrol officer with the Columbus Police Department, testified that he went to appellant's residence in the early morning of July 14, 1996, and met with appellant regarding a smashed driver's-side window in appellant's white Cadillac. Officer Chatman noted that nothing inside the vehicle was disturbed, and at no time did appellant state to him that a hoist had been in the vehicle. He also did not state that the vehicle was disabled or had any mechanical problems. At no time did he ever receive another call from appellant stating that anything had been stolen from the vehicle.
Detective Steven Eppert of the Columbus Police Department interviewed appellant after he was arrested on October 30, 1996. Appellant told Detective Eppert that the hoist had been stolen from his car while he was at a family reunion, he had called the police the same night, and he had called the rental company the next day to inform it of the theft. Appellant did not tell him that there were any witnesses to the theft.
Based upon a careful consideration of the testimony and evidence presented, and construing the evidence in favor of the prosecution as is required in a sufficiency analysis, we are compelled to find that a reasonable jury could have found that the prosecution sufficiently proved all of the elements of theft pursuant to R.C. 2913.02(A)(2) beyond a reasonable doubt.
The testimony of Mr. Cobler and Ms. Love shows that appellant exerted control over the engine hoist past the expiration of the twenty-four hour rental. Ms. Love testified that there was no agreement that appellant could keep the hoist for any longer period. Ms. Love stated that his rental agreement was only for twenty-four hours, and she never consented to appellant's keeping the hoist past that time. Neither Ms. Love nor Mr. Cobler ever received a call from appellant informing them that he would not return the hoist on time or that the hoist was stolen. Further, the rental contract specifically provided for only a twenty-four-hour rental, and appellant signed the contract. Thus, appellant knowingly exerted control over the hoist past the twenty-four-hour consent period by Shoemaker. Further, the hoist was never returned, so there was evidence that appellant permanently deprived Shoemaker of the hoist.
There was also testimony that would support the finding beyond a reasonable doubt that appellant acted with the purpose to permanently deprive Shoemaker of the hoist. Ms. Love stated that at no time did she receive a phone call from appellant or appellant's friends stating that the hoist was missing. Mr. Cobler and/or Mr. Cobler's brother called appellant on at least six occasions, and left messages with people at his residence for appellant to call Shoemaker regarding the hoist. Mr. Cobler also tried to call appellant at his work number six to twelve times. There were also no notations on the contract that appellant had called to report the hoist stolen. Thus, construing this evidence most strongly in favor of the prosecution, reasonable minds could conclude that appellant acted with purpose to permanently deprive Shoemaker of the hoist.
The evidence also supports the jury's finding that, pursuant to R.C. 2913.61, the stolen hoist was valued between $500 and $5,000. Ms. Love testified that as part of her duties at Shoemaker she made the payment for the engine hoist at the time it was purchased by Shoemaker. Ms. Love testified that the hoist has a list price of approximately $800 and that Shoemaker paid $647 for the hoist. She stated that the engine hoist was only three months old at the time appellant rented it. Mr. Cobler testified that it would cost Shoemaker $800-$1,400 dollars to buy an engine hoist depending on the style and size. He also valued the hoist at $1,130 on the police report. Construing this testimony as to value in favor of the state, reasonable minds could conclude that the value of the hoist was greater than $500 but less than $5,000.
Therefore, after construing the evidence in a light most favorable to the prosecution, we find that reasonable minds could reach the conclusion that the state presented sufficient evidence to prove each element of the crime of theft beyond a reasonable doubt.
Appellant moved for acquittal pursuant to Crim.R. 29(A) at the close of all evidence. After reviewing the entire record and construing the evidence most strongly in favor of the state, for the reasons stated above we also find that reasonable minds could conclude that the evidence proved each element of theft beyond a reasonable doubt.
Appellant also presents an argument in this assignment of error as to the admissibility of testimony by the two employees of Shoemaker, Mr. Cobler and Ms. Love, regarding the value of the hoist. However, Crim.R. 29(A) motions challenge the sufficiency of the evidence, not the admissibility of the evidence. The rule states an acquittal shall be granted "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). Thus, it is improper for appellant to raise an issue regarding admissibility of evidence under a sufficiency of the evidence argument, and we will not address it. See State v. Cochenour
(Feb. 16, 1989), Ross App. No. 1371, unreported.
Further, while this assignment of error is captioned as a challenge to the sufficiency of the evidence pursuant to Crim.R. 29(A), appellant also inserts wholly unrelated arguments under this assignment of error that (1) R.C. 1351.03(B) precludes criminal prosecution against appellant in this case; and (2) the date used on the indictment was incorrect by several days, despite the use of the term "on or about." We need not address these issues, however, as they are not separately set forth as assignments of error. App. R. 12(A); Akron v. Wendell (1990),70 Ohio App.3d 35.
Therefore, we find that reasonable minds could reach the conclusion that there was sufficient evidence to prove all the elements of the crime beyond a reasonable doubt. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the jury verdict of guilty was against the manifest weight of the evidence and that there was sufficient evidence of an alibi to permit the jury to consider that defense. Initially, it should be noted that appellant's brief contains no separate argument for the second assignment of error. Although it is not specifically indicated in the brief, apparently appellant's argument regarding the manifest weight of the evidence is included in the second half of his argument for his first assignment of error.
A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins, at 386-387. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror" and makes an independent review of the record. Id. at 387. In taking on this role, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Statev. Martin (1983), 20 Ohio App.3d 172, 175. A jury verdict will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the jury. State v. Fields (1995),102 Ohio App.3d 284, 287.
We have already reviewed the state's evidence under the first assignment of error. At trial, appellant presented the testimony of numerous witnesses. James Wright, an employee for appellant, was with appellant when he rented the hoist from Shoemaker. Mr. Wright was in charge of repairing appellant's Cadillac, including removing the engine. He testified that he worked on the Cadillac on July 11 and July 12, 1996. Mr. Wright testified that he quit working on the car on July 12 at about 8:30 p.m. He knew that the hoist was due on the morning of July 12, but he continued to use it. At no time did he call Shoemaker. He did not know whether appellant ever contacted Shoemaker to tell it that they were keeping the hoist past the due date. After Mr. Wright finished using the hoist on the evening of July 12, he disassembled it, put parts of it in the front and back of the Cadillac, and covered the parts with a tarp. Mr. Wright stated that appellant did not know that he was storing the hoist in the back of the Cadillac.
In the early afternoon of July 13, 1996, appellant called Mr. Wright and told him that the window of the Cadillac had been broken into. When he went to appellant's house after the phone call, Mr. Wright told appellant that he had placed the hoist in the Cadillac and realized the hoist was not in the car.
Mr. Wright testified that appellant waived down a police cruiser that was driving by, and appellant told the police that a hoist had been stolen from his car. Mr. Wright stated that the police officer told appellant that he did not have to file a report on the stolen hoist since he had previously that morning filed a report on the broken window. Mr. Wright never called Shoemaker to report the theft. He did not know how the hoist was stolen.
Melvin Gooch, appellant's neighbor, testified that while walking home on the evening of July 12, 1996, he witnessed two African-American men walking on the street where appellant's Cadillac was parked. The two men were looking inside car windows. Later that evening he heard glass breaking. He testified that he knew that the hoist was in the back of the Cadillac because he helped Mr. Wright load it into the Cadillac. The next day, Mr. Gooch saw the appellant's window had been broken, and he spread the tarp from inside the car over the roof and broken window. He tried to find appellant to tell him about the broken window, but appellant was not home. He eventually spoke to appellant the next day.
Mr. Gooch testified that on July 14, 1996, he was with appellant and Mr. Wright in the street cleaning up the broken glass when the police drove by them and stopped, although Mr. Gooch could not remember the type or description of the police vehicle. He testified that the officers got out of their vehicle, looked at the car, and then got back into their vehicle and left.
Sophia Shaw, appellant's wife, testified that she and appellant had gone to a family reunion using a rental car the day of the alleged theft of the hoist from the Cadillac. They returned from the family reunion in the early morning hours of July 13, 1996, but did not see the Cadillac because they parked in a different area from where the Cadillac was parked. They went to church at noon on July 13, 1996 and did not return until approximately 11:30 p.m. When they returned that evening, they noticed that the Cadillac window was broken. She did not see the tarp that Mr. Gooch testified he had put over the top of the car that day.
Ms. Shaw testified that appellant then went into their home and called the police, who arrived at their residence shortly thereafter. She did not know that the hoist was in the Cadillac at the time, and appellant did not tell her until July 14, 1996. She also witnessed the police speaking with appellant out in the street during the following afternoon, although she did not see Mr. Gooch there, despite Mr. Gooch's testimony that he was present at that time. She testified that her husband put the tarp over the car after they cleaned up the glass. Appellant later told her that the hoist had been stolen, and he had asked the police what he should do.
Kimberly Adkins, a detective with the Columbus Police Department who investigated the theft reported by Mr. Cobler, testified that she attempted to contact appellant regarding the hoist, but he never returned her calls. After learning from Mr. Cobler that appellant claimed the hoist was stolen, Detective Adkins looked for a police report regarding a stolen hoist but did not find one. She called appellant's home on September 25, 1996 and left a message with his wife for him to call her so that she could gather information from him regarding the stolen hoist. Detective Adkins waited until October 30, 1996 for appellant to call her back, but he failed to do so, so she filed a warrant for his arrest.
Detective Adkins also testified that if somebody were to have filed a malicious destruction report but later found out that something had also been stolen, that person would file a report reclassification form, which would convert the malicious destruction report to a theft report. She further stated that it is standard police procedure that an officer would tell a person this information so that they could reclassify the original report to a theft report. She testified that patrol officers on the street have these forms with them. Appellant did not file one of these forms to reclassify his malicious destruction report into a theft report for the stolen hoist.
Detective Adkins testified that counsel for appellant contacted her for the first time one week before trial regarding an alleged eyewitness to the theft of the hoist from the Cadillac. Detective Adkins interviewed the alleged witness, Wayne Watkins, but did not learn any additional information that would support that he was an eyewitness. Appellant completed a constitutional waiver form and gave a statement to the police. In that statement, he stated that he made a theft report, which Detective Adkins later discovered was false.
Wayne Watkins, appellant's neighbor and friend, testified that at approximately midnight on the night of July 12, 1996, he saw a young black man break the window of appellant's car using some kind of object. After the man broke the window, he then opened the door and made two trips up an alley while carrying numerous pieces of what he later discovered was the engine hoist. Mr. Watkins also did not see Mr. Gooch walking home that evening. He stated he did not know if he had watched the whole time this man was taking the items from the car. He never saw anybody put a tarp over the window and never saw anybody cleaning the glass. He also never saw Mr. Wright using the hoist or hoisting out the engine. Mr. Watkins stated that he did not go to the police or to appellant with this information because he did not want to get involved. He did not come forward with the information until appellant came to his house a few days later.
Appellant testified that he and Mr. Wright rented the hoist from Shoemaker on July 11, 1996. Although he has rented cars on fifty previous occasions with no problems, this was the only hoist he has ever rented. He testified that when he rented the hoist, he told Ms. Love that he needed the hoist for two to three days. He thought that he could have the hoist for three days since he left the $100 deposit.
Early in the morning of July 13, 1996, appellant was at his mother's house for a family reunion and arrived back at his residence at about 2:00 or 3:00 a.m. Upon arriving home, he parked his rental car in front of the house and did not notice the Cadillac parked on the street because it was dark and he was tired. He stated that he was so busy with the reunion on July 12-13 that he did not think about where Mr. Wright would have stored the hoist.
After going to another family reunion during the day and evening of July 13, 1996, appellant arrived back at his residence with his wife and kids at approximately 11:30 p.m. When he pulled his car up to the side of the house, he noticed that somebody had broken the window of the Cadillac parked on the street. He went into his house and called the police immediately. When the police arrived, he filled out a report regarding the broken window, but he did not know at that time that the engine hoist had been put inside the car by Mr. Wright.
In the afternoon of July 14, 1996, appellant stated that he called Mr. Wright, told him about the window, and asked him to come over and fix it. After Mr. Wright arrived, he realized that the hoist had been stolen from the Cadillac and told appellant. While Mr. Gooch and Mr. Wright were clearing the glass, appellant flagged down a police officer that was driving down the street in a police wagon, and he told them about the theft of the hoist. Appellant stated that the officer told him that because he filed a malicious destruction report regarding the window, he did not have to file another report regarding the theft. He testified that he then went inside and called Shoemaker and told it that the engine hoist had been stolen.
Appellant further stated that a few days later a man from Shoemaker called him and told him that he owed $1,100 for the hoist. He testified that the representative from Shoemaker told him that he needed to file a police report, and he replied that he did not have time to file a police report because he was working. He stated that the man from Shoemaker told him he was going to jail and that this was the only call he ever got from Shoemaker. He stated on cross-examination that he always in the past had reported theft to the police and has filed theft reports in the past.
Appellant testified that Detective Adkins called his house and spoke with him. He told her that he made a police report but not a theft report. He also told her that there was an eyewitness to the theft. She never told him to file a theft report and never asked him the name of the eyewitness. In response to the question as to why Detective Adkins would have testified that she never spoke with him on the phone, he stated that Detective Adkins must have forgotten.
Upon review of the record, we cannot say that the jury lost its way in finding appellant guilty on the charge of theft. The evidence in this case does not weigh heavily against a conviction. The testimony of the police officers and employees of Shoemaker at trial established all the requisite elements of the offense. Although appellant's and his witnesses' version of the events were different, and although appellant presented testimony as to an alleged intervening theft of the hoist from him, the weight given to evidence and judgment of the credibility of witnesses are within the province of the jury. State v. Martin
(1986), 21 Ohio St.3d 91, 95. Based upon the record before us, we find no reason to upset the jury's evaluation of the credibility of the witnesses and the weight to be given the evidence. SeeState v. DeHass (1967), 10 Ohio St.2d 230. It was within the province of the jury to disbelieve the testimony of appellant and his witnesses as to their claim that the hoist had been stolen from his vehicle. We therefore find that appellant's conviction was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the trial court erred in failing to require the jury commissioner to provide another jury pool because the chance of randomly having an all-Caucasian jury was miniscule and that the trial court erred in limiting appellant's voir dire as to questions of racial bias.
Appellant first argues that based upon "simple mathematics" it should be determined that the selection of the jury was not random. Initially, we note that in order to be timely, objections to the jury selection process must be made prior to the jury panel being sworn. Lengyel v. Brandmiller
(1942), 139 Ohio St. 478, 480. In the present case, appellant's counsel did not object to the venire of prospective jurors until after the jury was sworn in, and, therefore, arguments as to this issue were waived. Nevertheless, a jury array does not have to reflect an exact cross-section of the community. State v. Lundgren
(1995), 73 Ohio St.3d 474, 480, quoting State v. Strodes (1976),48 Ohio St.2d 113, 115, death penalty vacated (1978),438 U.S. 911, 98 S.Ct. 3135. "[There is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Taylor v. Louisiana
(1975), 419 U.S. 522, 538, 95 S.Ct. 692. Thus, the constitution does not guarantee defendants the right to a jury of a particular composition. Appellant has failed to prove that his right to a representative cross-section of the community has been violated. See Duren v. Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664;State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus.
Appellant next argues in his third assignment of error that the trial court erred in prohibiting his counsel from inquiring on voir dire whether the potential jurors believed that (1) white people tell the truth and African-Americans lie; (2) there are high crime rates among African-Americans; and (3) whether criminal charges for being wrongfully accused were not brought because of race with regard to one potential juror.
A defendant must be permitted on some occasions to inquire into racial bias. Mu'Min v. Virginia (1991), 500 U.S. 415,423-424, 111 S.Ct. 1899. Further, the scope of voir dire is left to the discretion of the trial court. Lundgren, at 481; State v.Bedford (1988), 39 Ohio St.3d 122, 129. See Rosales-Lopez v.United States (1981), 451 U.S. 182, 188-189, 101 S.Ct. 1629. As stated by the United States Supreme Court, a trial court has "great latitude in deciding what questions should be asked on voirdire." Mu'Min, at 424. The judgment of the trial court will not be reversed absent an abuse of discretion. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
After a review of the record, we find that the trial court did not abuse its discretion in limiting the questions appellant's counsel could ask during voir dire. The trial court may limit questioning in the area of racial prejudices, so long as the broad or general meaning of the inquiry is understood by prospective jurors in order to intelligently respond. State v.Jones (1984), 20 Ohio App.3d 331, 332. The trial court did allow appellant's counsel to inquire as to whether the jurors could be fair and impartial in light of appellant being African-American, as well as his witnesses. Thus, appellant was not denied an opportunity to question jurors on racial attitudes, and we find appellant's argument to be without merit.
Appellant also argues in his third assignment of error that the trial court erred in not sustaining his objections to the prosecution's racial comments during closing arguments, including the prosecutor's statements during closing argument that (1) the reason that the case was a criminal case and not a civil case was appellant's "attitude," which appellant claims translates into "uppity nigger"; and (2) appellant and his witnesses were "liars" and "the real thieves." However, appellant's third assignment or error as captioned relates only to voir dire and jury selection, and we need not address this issue as it is not separately set forth as an assignment of error. App. R. 12(A); Akron v. Wendell,supra. Further, as appellant admits in his brief, he raises the same argument regarding the prosecutor's comments in his fifth assignment of error, which we address infra. Therefore, appellant's third assignment of error is without merit and hereby overruled.
Appellant argues in his fourth assignment of error that the trial court erred in numerous instances regarding jury instructions. Appellant first argues that the trial court and the state "engaged in a discourse all to themselves" during the jury instruction phase of the trial. However, a review of the transcript reveals that the court discussed the proposed jury instructions in open court and appellant's counsel participated.
Appellant next argues that the trial judge erred in giving the following instruction at the end of the jury instructions: "Before you can find the defendant guilty of an offense that provides alternative ways of committing the offense, you must be unanimous in your verdict as to any one alternative." Appellant claims that this instruction gave the jury the impression that they could consider any kind of theft, including those not included in the indictment.
We have before found that a jury charge containing an essentially identical jury instruction as the "alternative ways" instruction given in the present case was proper and a correct statement of law. See State v. Johnson (1992), 79 Ohio App.3d 343;State v. Auge (June 26, 1997), Franklin App. No. 96APA12-1753, unreported (1997 Opinions 2723). We find that the trial court's "alternative ways" instruction was a correct statement of law and was not given in a manner that could have misled the jury. See State v. Hardy (1971), 28 Ohio St.2d 89, 92;State v. Porter (1968), 14 Ohio St.2d 10; Centrello v. Basky
(1955), 164 Ohio St. 41. Although appellant argues that the instruction could have been construed by the jury to imply that they could find appellant guilty not only of a violation of R.C.2913.02(A)(2) as indicted, but, also, of a violation of R.C.2913.02(A)(1), (3) or (4), the jury instructions clearly delineated only the elements of R.C. 2913.02(A)(2). The jury instructions did not include any elements of subsections (A)(1), (3) or (4), and, thus, the jury could not have been misled into believing they could find appellant guilty under anything other than R.C. 2913.02(A)(2). Therefore, appellant's argument is without merit.
Appellant next contends in the fourth assignment of error that the trial court erred in giving only the definition of "deprive" as provided in R.C. 2913.01(C)(1), and failing to give the definition of "deprive" as provided in R.C. 2913.01(C)(3). However, "[w]hen a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." Schade v. Carnegie BodyCo. (1982), 70 Ohio St.2d 207, paragraph one of the syllabus. Appellant did not object to the definition of "deprive," and he did not make his position sufficiently clear to give the court an opportunity to correct the alleged defect in the charge. SeeState v. Wolons (1989), 44 Ohio St.3d 64, 67.
Because appellant failed to raise any objection at trial, his only recourse is to argue that the trial court's failing to give the other definition of "deprive" amounts to plain error. A plain error is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade, at 209. After review of the record, we find that the trial court's instruction regarding the definition of "deprive" does not fall within the plain error exception. In the present case, the state had to prove that appellant intended to deprive Shoemaker of property based on only one of the three alternate definitions of "deprive." However, we note that had this instruction been given it could not have benefited the appellant, as it would only have given the jury a third independent basis upon which to find that he intended to deprive Shoemaker of property. See State v. Joy (1995), 74 Ohio St.3d 178,181. Thus, appellant was not prejudiced by this alleged error.
We also agree with the state's contention that the evidence before the jury supported only the first clause of the first definition of "deprive" showing that appellant had planned to "[w]ithhold property of another permanently." R.C.2913.01(C)(1). Further, the state's presentation of the case, including opening and closing arguments, did not rest on a theory that appellant failed to provide "proper consideration" for the hoist, as provided in R.C. 2913.01(C)(3). In addition, the state was required to prove that appellant intended to deprive Shoemaker of property based on only one of the three alternate definitions of "deprive," and we have already found there was sufficient evidence to find appellant guilty of theft pursuant to the definition of "deprive" as found in R.C. 2913.01(C)(1). Therefore, we find that appellant's argument is without merit.
Appellant next asserts that the court erred in not giving numerous jury instructions he presented to the court. Appellant submitted an original list of proposed jury instructions and a supplemental list of proposed jury instructions, which contained a total of forty proposed jury instructions. Specifically, appellant claims that the trial court erred in not giving his third, fourth, fifth, sixth, seventh, eight, and twelfth instructions from his original list of proposed jury instructions, and his first, second, third, fourth, fifth, sixth, eighth, eleventh, twelfth, fourteenth, fifteenth, twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth instructions from his supplemental list of proposed jury instructions.
When reviewing a trial court's jury instructions, an appellate court must limit its review to whether the trial court's refusal to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case.Wolons, at 68; Prejean v. Euclid Bd. of Edn. (1997), 119 Ohio App.3d 793,804-805. A party's requested jury instructions "should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction." Id. at 804, citing Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. Additionally, while "it is not mandatory upon a trial court to give requested instructions to the jury verbatim * * * if the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts they must be included, at least in substance, in the court's charge to the jury." Statev. Nelson (1973), 36 Ohio St.2d 79, paragraph one of the syllabus.
Paragraph seven of appellant's original proposed jury instructions and paragraph twenty-three of his supplemental proposed jury instructions relate to appellant's assertion of an "alibi." These instructions state that appellant's alibi that he was at a family reunion at the time of the crime must be proven by a preponderance of the evidence. However, "[a]libi is not an affirmative defense. Thus, no burden of proof is placed upon one asserting alibi. Alibi is used to support the general plea of not guilty and simply applies to the claim that the defendant was elsewhere when the crime was committed. State v. Payne (1957),104 Ohio App. 410." State v. Snider (July 29, 1988), Portage App. No. 1838, unreported. Therefore, because these instructions contain incorrect assertions of law, appellant was not entitled to these instructions.
Paragraph eight of appellant's original proposed jury instructions requests a standard instruction for alibi.
 * * * A trial court's instructions to the jury on alibi are little more than a reminder that evidence of alibi was introduced. * * * [I]f the defendant is found, beyond a reasonable doubt, to have committed the crime, then the jury necessarily must have considered and disbelieved the evidence of alibi. * * *
State v. Sims (1982), 3 Ohio App.3d 331, 335. Thus, where the record supports a finding of guilt beyond a reasonable doubt and the appellant cannot show that the result would have been different had the jury been instructed on alibi, the failure to instruct is not reversible error. State v. King (Nov. 14, 1996), Cuyahoga App. No. 68726, unreported; State v. Miller (Mar. 12, 1992), Cuyahoga App. No. 59987, unreported. The jury rejected the testimony presented by appellant regarding the theft of the hoist and found beyond a reasonable doubt that appellant committed theft. Appellant cannot show that the result would have been otherwise had the alibi instruction been given, and appellant suffered no prejudice.
Paragraphs three, four, and six of appellant's original proposed jury instructions state that the jury must consider all of the defenses of appellant and that appellant must prove each defense by a preponderance of the evidence. It is true that a defendant must prove an affirmative defense by a preponderance of the evidence. R.C. 2901.05(A). Under Ohio law, an affirmative defense is a justification for admitted conduct which does not "seek to negate any of the elements of the offense which the state is required to prove." Martin, 21 Ohio St.3d at 94. However, it is unclear as to what, if any, "affirmative defense" appellant claims to have raised in order to be entitled to a jury instruction on such. Appellant did claim that the hoist was stolen by a third party while it was in his possession, but this claim would not be affirmative in nature because it would negate an essential element of theft, which requires a purpose or intent to commit the offense. Appellant has not given any reasoning as to how the court erred in failing to give these instructions, and we find that the trial court did not err in refusing to give this instruction.
Paragraph five of appellant's original proposed jury instructions relates to the state's burden of proving every element of the offense beyond a reasonable doubt. However, the trial court charged the jury with an instruction similar in substance to this proposed instruction of appellant, and the trial court need not give appellant's instruction verbatim. See Nelson,supra.
Paragraph twelve of appellant's original jury instructions requests that the jury be instructed that if the jury found that someone stole the hoist from appellant, then the jury must find appellant not guilty. However, we find the trial court's instructions clearly state that appellant could only be found guilty if he, personally, committed the theft.
Paragraph one of the supplemental proposed jury instructions relates to R.C. 2913.02(A)(1). However, appellant was indicted under R.C. 2913.02(A)(2), and, therefore, appellant was not entitled to this jury instruction.
Paragraphs two, three, four, five, and six of the supplemental proposed jury instructions relate essentially to criminal intent to deprive. Paragraphs eight and eleven of the supplemental proposed jury instructions state that appellant cannot have the requisite intent to deprive if the hoist was stolen by an unknown third party while it was in his possession. However, the trial court's charge to the jury clearly explained that in order to find appellant guilty of theft, they had to find beyond a reasonable doubt that he knowingly exerted control over the engine hoist beyond the scope of the express or implied consent of the owner or other person authorized to give consent. The court also adequately explained that appellant must have acted with the purpose to deprive. Further, the trial court provided the definitions of "deprive," "knowingly," and "purposely." Thus, the charge to the jury included the required criminal intent and also made it clear that appellant was the individual that was required to have such intent. Therefore, we find that the trial court charged the jury with instructions similar in substance to those proposed instructions of appellant regarding these issues, and the trial court was not required to give appellant's instructions verbatim. See Nelson, supra.
Paragraphs twelve and fourteen of appellant's supplemental proposed jury instructions state that the jury cannot consider the language on the lease agreement as an admission of guilt pursuant to R.C. 1351.03(B). We find the trial court did not err in not giving this instruction because R.C. 1351.03(B) does not apply to the type of transaction involved in this case. R.C. 1351.03(B) applies only to lease-purchase agreements, not to rental agreements, as is present in this case. R.C. 1351.01(F). Further, the rental agreement clearly does not give consent to find probable cause for theft if the rented item is not returned, as suggested by appellant. The rental agreement in question merely gives caution to the customer that failure to return the rented item within seventy-two hours of the expiration of the contract will subject the customer to criminal action. We find that to include the proposed jury instructions, including a citation to R.C. 1351.03, would have only served to confuse the jury. Appellant's argument is without merit.
Paragraph fifteen of appellant's supplemental proposed jury instructions states that if the jury finds beyond a reasonable doubt that appellant "initially" obtained the hoist or exerted control over it beyond the owner's consent, he must be found guilty. However, this instruction is misleading. Although appellant could be found guilty if he initially obtained the hoist or initially exerted control over it beyond the owner's consent, this is not the only manner in which appellant could be found guilty of theft under R.C. 2913.02. Appellant argued repeatedly that he could not be found guilty of theft if the initial obtainment of the hoist was lawful. However, appellant could still be found guilty of theft under R.C. 2913.02 even if the initial obtainment or initial exertion of control of the hoist was with the consent of the owner. See R.C. 2913.02, Committee Comment to H511; State v. Porter (Jan. 25, 1995), Summit App. No. 16769, unreported. Further, the trial court's instructions already included an instruction on the requisite standard of proof. Therefore, we find that the trial court did not err in failing to give the proposed jury instruction.
Paragraph twenty of appellant's supplemental proposed jury instructions states that appellant cannot be found guilty if the jury finds that the case in question was a civil case and not a criminal case. However, this instruction would have served no purpose for the jury and would have clearly been confusing. The jury was only to determine whether appellant was guilty of violating a criminal statute. Whether he was civilly liable for breaching the rental contract was irrelevant to the present case.
Paragraph twenty-one of appellant's supplemental proposed jury instructions states that the silence by appellant or his witnesses cannot be considered an admission of guilt. The instruction does not make clear to what silence appellant is referring. Appellant spoke with police, gave a statement to police, and also testified at trial. Appellant argues in his brief that this paragraph was intended to render harmless any assertion by Shoemaker's employees and Detective Adkins that appellant did not call or contact them regarding the stolen hoist. A prosecutor may inquire into prearrest silence because "no governmental action [has] induced [the defendant] to remain silent before arrest." Jenkins v. Anderson (1980), 447 U.S. 231, 240,100 S.Ct. 2124. The silence about which appellant was requesting the jury instruction was prior to appellant's arrest or being read his Miranda rights. Appellant's silence was not an exercise of his rights, and, therefore, no promise was implied that the silence would not be used against him. Therefore, appellant was not entitled to this jury instruction.
Paragraphs twenty-two and twenty-four instruct the jurors to not consider any other crimes relating to the engine hoist other than that set forth in the indictment. However, the trial court's charge to the jury clearly indicates that the indictment relates only to appellant and clearly sets forth the elements of theft pursuant to R.C. 2913.02(A)(2) as contained in the indictment. Appellant also argues that these proposed instructions were meant to be "contrary" to the court's instructions regarding the "alternative ways" instruction; however, we have already found that the trial court's "alternative ways" instruction was proper. Thus, appellant's argument is without merit.
Accordingly, we find that the trial court did not abuse its discretion in failing to give appellant's proposed jury instructions. Therefore, appellant's fourth assignment of error is without merit and hereby overruled.
Appellant argues in his fifth assignment of error that there were many instances of judicial and prosecutorial misconduct during the trial and that the trial court erred in denying his motion for a mistrial based upon these instances of misconduct.
The granting or denying of a mistrial is within the sound discretion of the trial court, and will not be disturbed absent a showing that the accused has suffered material prejudice.State v. Blankenship (1995), 102 Ohio App.3d 534, 549. A mistrial should be granted only when a fair trial is no longer possible.State v. Franklin (1991), 62 Ohio St.3d 118, 127. A mistrial should not be granted merely because some minor error or irregularity has arisen. Blankenship, at 549.
Appellant first claims that the trial court's judicial misconduct was demonstrated by not allowing his counsel to ask the potential jurors certain questions during voir dire regarding racial biases. We've addressed this contention infra and determined that the trial court did not abuse its discretion in limiting appellant's voir dire on this subject.
Appellant next argues that the state's conduct was improper in calling appellant and his witnesses "liars" and "the real thieves" during closing argument. Appellant also argues that the trial court erred in allowing such comments. However, the record fails to establish that the prosecutor made the specific comments claimed by appellant. Any statements made by the state on the record regarding the veracity of appellant's witnesses were based upon the testimony and evidence presented at trial.
Appellant also argues that it was judicial misconduct for the trial court to state to appellant, "`When you get six months in jail, and you have no money, you can get a public defender who will get you out of jail based upon ineffective assistance of counsel[.]'" We note that the record does not reveal this direct quote. Although the trial court did make statements regarding ineffective assistance of counsel, the trial record does not reveal an affirmative statement, as suggested by appellant, that his counsel was ineffective and that he would be able to get his conviction reversed on appeal due to ineffective assistance of counsel. The trial court did make the statement to appellant's counsel that she should be careful of her behavior and actions because an appellant can always raise ineffective assistance of counsel on appeal based upon the behavior and actions of the trial attorney. However, these statements were made outside the presence of the jury, and we find appellant has suffered no material prejudice.
Appellant also argues that the trial court "berated" appellant's counsel in open court for asking questions about weight and "skinhead racial bias" of the state's two witnesses. A review of the record does not support appellant's account and interpretation of these instances, and we find this argument without merit.
Appellant next argues that the trial court erred in "berating" appellant's counsel for wanting to call an expert witness to testify that the case was civil and not criminal. The transcript does not support appellant's account and interpretation of these events, and we find this argument without merit.
Appellant also claims that the trial judge entered the jury room while it was a "hung jury" to give the definition of a word, soon after which the jury returned a unanimous guilty verdict. There is no evidence in the record that the trial judge ever entered the jury room. The trial transcript only reveals that the trial court wrote the answer to the jury question on a legal pad and then discussed the answer with counsel for both parties, neither of whom objected. This argument is without merit.
Appellant claims that the prosecutor's misconduct was demonstrated when the prosecutor "screamed" at appellant's counsel, "Marcell, you are nothing but a piece of sh*t" and "Bitch, you can just go f**k yourself." These alleged statements were made outside the presence of the jury and are not in the record. These alleged statements were also not made in the courtroom itself. Counsel for the state stated on the record that she did not make the alleged statements and that any comments she did make were taken out of context by appellant's counsel. Appellant's counsel has attached the affidavit of appellant and various other witnesses to verify the alleged incident; however, it is axiomatic that a reviewing court is limited to the record from the lower court. State v. Ishmail (1978), 54 Ohio St.2d 402. Although, if true, we find this behavior unacceptable and unprofessional, we also find appellant suffered no material prejudice. Thus, appellant's argument is without merit.
Appellant also argues that it was prosecutorial misconduct for the prosecutor to state during closing argument that the reason that the case was a criminal case and not a civil case was appellant's "attitude," which appellant claims translates into "uppity nigger." The transcript does not support appellant's interpretation of this statement, and we find this argument without merit.
Appellant also claims that it was prosecutorial misconduct for the prosecutor to state that "a theft was as serious as a murder" during voir dire. However, appellant mischaracterizes the prosecutor's statement, which actually was, "This is just as serious as a murder trial, okay." Thus, the prosecutor did not compare theft to murder. The prosecutor was referring to the trial procedure itself, not the offenses. The prosecutor's statement was meant to underscore that a trial procedure for theft is just as serious as a trial procedure for murder. We find that appellant was not prejudiced by this statement.
Appellant claims that based upon these statements made by the trial court and the state, the trial court erred in not granting his motion for a mistrial. Because we have found that none of these events and statements constituted prosecutorial or judicial misconduct and none materially prejudiced appellant, the trial court did not abuse its discretion in denying appellant's motion for a mistrial.
Appellant argues in his eighth assignment of error that the trial court erred when it refused to give the jury additional time to deliberate the following week. Appellant also again argues that the trial court erred in entering the jury room alone under the pretext of defining a word, soon after which, the jury returned with a unanimous guilty verdict. We have already addressed appellant's argument that the trial judge entered the jury room to answer a jury question, and we found appellant's argument to be without merit.
As for appellant's contention that the trial court refused to give the jury additional time to deliberate the following week, a review of the record does not support his assertion. Only two of the six statements cited by appellant were made in the presence of the jury. In the first statement, the trial court told the prospective jurors during voir dire that "this trial will definitely be concluded this week, so there's no need to worry that it will go over." We find this statement to be nonprejudicial and in no way was a refusal of the trial court for the jury to deliberate past Friday if needed. In the second statement, the trial court stated to the jury before opening arguments that they would not stay later than five o'clock unless they were in deliberations and they collectively agreed to stay past five. This statement was made in the context of determining whether staying until five o'clock every day would cause any problems, including transportation, dependent care, and appointment conflicts. The trial court specifically stated that they could stay past five to deliberate if they agreed. We find that these statements were reasonable and did not in any manner pressure the jurors to come back with a decision before they had fully completed deliberations. The other circumstances cited by appellant did not take place in front of the jury, and we find that they did not prejudice appellant. Therefore, appellant's eighth assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and KENNEDY, JJ., concur.